UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BAILLIE LUMBER CO., L.P., | Case No. CV 11-6038-PLA |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER VENUE** |
| v. | |
| ACE AMERICAN INSURANCE CO., | |
| Defendant. | |

This matter is before the Court on defendant's Motion to Transfer Venue (the "Motion"), filed on October 18, 2011. The Court has considered all of the pleadings filed in connection with the Motion, as well as counsels' argument at the November 15, 2011, hearing. For the reasons set forth below, defendant's Motion to Transfer is **granted**.

**I.**

**PROCEDURAL HISTORY**

On June 22, 2011, plaintiff filed a complaint in Los Angeles County Superior Court against defendant, seeking damages for, among other things, breach of contract and bad faith in connection with an insurance policy issued by defendant to plaintiff. On July 21, 2011, defendant removed the action to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332.

Defendant filed its Motion to Transfer on October 18, 2011. Plaintiff filed its Opposition on October 25, 2011. Defendant's Reply was filed on November 1, 2011.[1]

## II.

## FACTUAL BACKGROUND

Defendant is a Pennsylvania insurance company with its principal place of business and corporate headquarters in Philadelphia. Declaration of Rebecca Golden in support of Motion ("Golden Dec."), ¶ 2. From February 1, 2008, to March 1, 2009, certain of plaintiff's business property was insured under a policy issued to plaintiff by defendant. In September, 2009, plaintiff reported to defendant that, during the policy period, lumber it sold to the Douglas Furniture company had been seized by Douglas' employees in Tijuana, Mexico and sold to pay wages after Douglas went into bankruptcy. Plaintiff made a claim under the policy, claiming that Douglas had not paid plaintiff for the seized lumber. Golden Dec., ¶ 4. Rebecca Golden, the claim representative for defendant who participated in the investigation, evaluation and handling of the claim for benefits made by plaintiff based on the insurance policy, has her office about 30 miles from defendant's headquarters, in Wilmington, Delaware. The documents in defendant's possession that underlie the claim at issue herein are located in Philadelphia and Wilmington. Golden Dec., ¶¶ 1-2. The insurance broker who brokered the policy at issue on behalf of plaintiff is located in Tennessee. Golden Dec., ¶ 3. While investigating plaintiff's claim, Ms. Golden corresponded with plaintiff's employees via letters addressed to plaintiff's headquarters in Hamburg, New York, and called its employees using a telephone number associated with plaintiff's Hamburg headquarters. She also communicated via email while investigating the claim. Golden Dec., ¶¶ 5-8. Plaintiff provided defendant with written confirmation of the terms of the contract

---

[1] Defendant disputes plaintiff's assertion that defendant failed to comply with Local Rule 7-3 by filing the Motion without first meeting with opposing counsel. In light of the issue involved herein, and since there does not appear to be any middle ground or some other resolution that could have been reached had the parties met and discussed the issue of transfer beyond what occurred, and as the issue has now been fully briefed, the Court in this instance will waive any perceived lack of compliance with Rule 7-3 and rule on the Motion.

between plaintiff and Douglas, and the confirmation originated in the form of an email sent from an employee located in plaintiff's Hamburg headquarters. Golden Dec., ¶¶ 5-6, Exs. A, F. Plaintiff's invoices for the sale of lumber to Douglas originated in Hamburg. Golden Dec., ¶ 8, Ex. C. All of plaintiff's personnel with whom defendant communicated concerning the claim work in plaintiff's Hamburg headquarters. Defendant's Memorandum of Points and Authorities in Support of Motion, at 2. Plaintiff's website indicates that its headquarters is located in Hamburg, and does not indicate having any personnel, offices or plants in the Central District of California. Golden Dec., ¶¶ 9-10. The website also indicates that various employees of plaintiff involved in the transaction, including Ruben Bocanegra and Mark Cifranick, are based in Hamburg. Golden Dec., ¶¶ 11-12. No employees for defendant who participated in this claim are outside of Philadelphia or Wilmington. However, defendant retained the services of an independent adjuster located in Tijuana. Golden Dec., ¶¶ 13-14.

Plaintiff is a limited partnership existing pursuant to the laws of Delaware, with its principal place of business in New York. Complaint, ¶ 1. Douglas Furniture is a Delaware limited liability company that before its bankruptcy maintained its principal place of business in El Segundo, California. Its agent for service of process maintains a residence in Palos Verdes Peninsula, California. Declaration of Ignacio J. Lazo in Opposition to Motion ("Lazo Dec."), ¶¶ 3-4. Counsel for plaintiff believes that the documentation necessary for trial in this action is not voluminous. He also contends that the journey from Tijuana to Buffalo, New York would take about twenty hours, while the trip from Tijuana to Los Angeles would take about three hours. Lazo Dec., ¶¶ 9-10. In its Opposition to the Motion, plaintiff asserts that defendant has admitted facts establishing the propriety of jurisdiction and venue in California; and has admitted the issuance of the policy at issue in this action, that plaintiff made a claim under the policy, and that defendant denied the claim. Thus, according to plaintiff, the matters about which defendant's personnel would testify are not in dispute. Plaintiff further argues that defendant, through its Assistant General Counsel, Gregory G. Lawton, admits that defendant's primary defense to this action is that a warehousing agreement between Douglas and plaintiff limits defendant's liability. In a letter from Mr. Lawton, defendant insists that the lumber was not stolen, but rather that its investigation revealed that it

was seized and auctioned off by the Mexican authorities. See Lazo Dec., Ex. D. Thus, according to plaintiff, resolution of this action will depend on whether title to the lumber ever passed from plaintiff to Douglas, and plaintiff argues that testimony as to two matters will determine the outcome of the case: 1. the meaning and effect of the agreement between plaintiff and Douglas, and 2. a determination of what happened to the lumber. As to the first, plaintiff waives any inconvenience as to its own employees involved in the lumber agreement. The other witnesses to the lumber agreement are associated with Douglas, and they do not reside in New York, or work for any party. Thus, they cannot be compelled to testify in New York, but would be available for trial in the Central District. As to the second matter, the witnesses to the disposition of the lumber are located in Tijuana. In sum, plaintiff contends that "the key events which will determine the outcome of this litigation occurred in California and Tijuana, not in New York" (Opposition, at 7), and that the Motion should be denied.

### III.

### **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Adjudicating a motion to transfer under Section 1404(a) involves an "individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

Considerations that may be relevant to the transfer decision include (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two fora; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. Jones, 211 F.3d at 498-99 (citing Stewart, 487 U.S. at 29-31; Lou v. Belzberg, 834 F.2d 730, 739

(9th Cir. 1987)).  The burden is on the party seeking transfer to justify "by particular circumstances that the transferor forum was inappropriate." <u>Commodity Futures Trading Commission v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).

## IV.

## DISCUSSION

**A.   Plaintiff could have brought this suit in the Western District of New York**

Plaintiff invoked federal jurisdiction on the grounds of diversity of citizenship.  Diversity would exist regardless of whether the case was filed in the Central District of California or in New York, since plaintiff is a Delaware corporation with its principal place of business in Hamburg, New York,[2] defendant has its principal place of business in Pennsylvania, and the amount in controversy exceeds the sum of $75,000.  Further, defendant conducts business in the Western District of New York, and it does not dispute personal jurisdiction there.  Motion, at 6.  Thus, plaintiff could have filed this action in the Western District of New York, a fact that it concedes in its Opposition to the Motion.  <u>See</u> Opposition, at 6 ("[plaintiff] could have brought this action in the Western District.").

**B.   Transfer to the Western District of New York will serve the convenience of the parties and witnesses as well as the interest of justice**

**1.   Location where the relevant agreement was entered into**

Plaintiff alleges that a written insurance contract existed between plaintiff and defendant which required defendant to reimburse plaintiff for the of loss of covered property, that plaintiff performed its obligations under the policy, and that it incurred covered losses, which defendant denied, thereby breaching the terms of the policy; that defendant did not diligently investigate or fairly evaluate the claims before denying them; and that defendant's position was not supported by fact or law.  While there is no direct evidence before the Court as to where the insurance policy

---

[2]   Hamburg, New York, is in Erie County, in the Western District of New York.  28 U.S.C. § 112(d).

5

was entered into, it can be inferred from the location of the parties that it was made and entered into at one (or both) of the two company headquarters relevant to this action, i.e., in New York or Pennsylvania. Indeed, communications concerning defendant's investigation of the insurance claim were made from and to plaintiff's corporate headquarters in the Western District of New York. There is no evidence, however, of any connection between the policy, and the investigation of the claim under the policy, and the Central District of California.

On the other hand, to the extent the agreement between Douglas and plaintiff will play a role in determining whether defendant's denial of the claim was proper, plaintiff submits that one of the witnesses to that agreement, its employee Mark Cifranick, would be produced by plaintiff in the Central District and would waive any inconvenience. The other witnesses to the agreement (those associated with Douglas) are not employees of either party, do not reside in New York, and thus cannot be compelled to attend trial in New York. Plaintiff represents, however, that they are available to be subpoenaed for trial in the Central District. Opposition, at 9.[3] The witnesses to the disposition of the lumber are in Tijuana, and cannot be compelled to attend court in either jurisdiction.

Thus, even if a trial in this action were to explore both the insurance policy and the lumber agreement, the Court has been presented with little concrete evidence to show that **any** witnesses to the lumber agreement are located in the Central District of California; at least one such witness is in the Western District of New York. No witnesses to the policy are in the Central District of California, and a number appear to be in the Western District of New York. Thus, this factor weighs in favor of transfer.

---

[3] Plaintiff argues that Mr. Lazo's Declaration establishes that Mr. Mendoza and Mr. Hitt, both associated with Douglas, are available to be subpoenaed in the Central District. Opposition at 9. Mr. Lazo's declaration does not refer to or otherwise support this assertion as to Mr. Mendoza. The evidence that Mr. Hitt is actually located in the Central District -- an address in the Central District and a voice on an answering machine reached by dialing a local area code -- is far from persuasive. In any event, the lumber agreement submitted with the Motion (Golden Dec., Exs. A, C), is between Mr. Cifranick and Mr. Mendoza, not Mr. Hitt. While plaintiff argued at the hearing that Mr. Hitt was instrumental in dealing with the lumber contract, absolutely no evidence of his involvement has been presented to the Court.

### 2. State most familiar with the governing law

Defendant asserts that New York law governs the contract at issue in this action, since California law dictates the choice-of-law determination. Under California law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Plaintiff argues that there has been no evidence presented in the Motion to show that the insurance policy was to be performed in New York, or was made there. However, based on the location of the parties' headquarters, it appears that the contract was made either in New York (where plaintiff apparently accepted the terms of the policy) or in Pennsylvania, and because the agreement was to be performed in one of those two locations, it is reasonable to assume that the law of one of those states would govern. As there is no evidence that the policy was made in or was to be performed in the Central District of California, this factor at a minimum is neutral, or may favor transfer to New York.

### 3. Plaintiff's choice of forum

A plaintiff's choice of forum is only "one of several factors a court must consider when ruling on a motion to transfer venue." Jacobson v. Hughes Aircraft Co., 105 F.3d 1288, 1302 (9th Cir. 1997), rev'd on other grounds, 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); see also Stewart Organization, 487 U.S. at 31 ("[Section] 1404(a) accords broad discretion to [the] district court, and [a] plaintiff's choice of forum is only one relevant factor for its consideration" (construing Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)); cf. Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 665 (9th Cir. 2009) (noting that, even in the *forum non conveniens* context, the deference due a plaintiff's choice of home forum is "far from absolute"), cert. denied, 131 S.Ct. 645, 178 L.Ed.2d 479 (2010). "Where the degree of deference given to plaintiff's choice of venue is reduced, defendant's burden to overcome plaintiff's choice is also reduced." Williams v. Granite Construction Co., 2009 WL 250104, at *2 (N.D. Cal. Feb. 3, 2009).

Where the operative facts did not occur in the forum of original selection, and the selected forum has "no particular interest in the parties or the subject matter," a plaintiff's choice of forum

is entitled to only "minimal consideration." Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968). Here, neither party "resides" in the Central District; there is no evidence that the insurance policy at issue was entered into with any involvement of parties in California; and plaintiff has pointed to no particular interest that the Central District of California has in this dispute. It has not been shown that the only possibly relevant witness in this District, Mr. Hitt, is in fact currently located here, or that he even has any relevant evidence.

Thus, in conducting the analysis under section 1404(a), the Court does not give substantial weight to plaintiff's choice of forum.

### 4. Parties' contacts with the forum

There is no evidence in the record about the parties' forum-related contacts beyond those pertaining to the instant litigation. Plaintiff is a New York entity and defendant is a Pennsylvania entity. Thus, this factor is neutral.

### 5. Contacts relating to the plaintiff's cause of action in the chosen forum

Most of the contacts relating to the policy involved in this litigation occurred out of or into plaintiff's headquarters in New York. Defendant corresponded with plaintiff by mail, email and phone at plaintiff's New York headquarters. Plaintiff sent invoices from its New York headquarters to Douglas.

While plaintiff contends that the main issues to be resolved in this action relate to the agreement between plaintiff and Douglas, defendant counters that the outcome of the litigation "turns on what information [plaintiff] provided to [defendant] regarding its claim for a loss that allegedly occurred in Tijuana, Mexico, as well as that developed by [defendant] in the course of its investigation and, after consideration of that information, whether [defendant] breached the Policy and/or acted in bad faith by determining that the coverage for the alleged loss was limited to $25,000 pursuant to coverage for 'Deferred Payments.'" Defendant's Reply, at 6. The causes of action alleged by plaintiff in the Complaint -- breach of contract, bad faith denial of claims, breach of implied covenant of good faith and fair dealing -- all center around performance of the insurance policy. Resolution of the insurance policy issues will involve witnesses from both plaintiff and defendant, none of whom are in the Central District of California. The Court thus

rejects plaintiff's claim that all of the "matters about which [defendant's] office personnel might testify are not in dispute." Opposition, at 7. Indeed, the only witness potentially relevant to any issue in this litigation who may be located in the Central District does not even appear on any document produced to the Court involving the lumber deal.

Because all or nearly all of the contacts relating to plaintiff's causes of action occurred in New York, but not California, this factor supports transfer.

### 6. Differences in litigation costs in the two fora

The parties do not submit evidence regarding the relative litigation costs between California and New York, aside from indicating that the time to fly from Tijuana to New York is far greater than it is to fly to Los Angeles. Even if the Court were to assume that the expense to fly to New York would be greater for the Tijuana witnesses (if any agreed to appear in court) than it would be for them to fly to Los Angeles, this factor is inconclusive. Further, California is 3,000 miles away from the headquarters of both plaintiff and defendant. On the other hand, plaintiff is located in the proposed forum, and defendant is much closer to that forum than it is to California. This factor favors transfer.

### 7. Availability of compulsory process to compel attendance of unwilling non-party witnesses

Defendant has identified a number of its employees who would be witnesses to the policy, its formation, and the claim process. Defendant will not need a court order to compel the attendance of its employee witnesses. Any witnesses located in Tijuana are beyond the compulsory process of the courts in both California and New York. Plaintiff argues that such witnesses, however, are much more likely to appear voluntarily in a court in the Central District of California than in a court across the country in New York.

Defendant argues that there is no evidence that Mr. Hitt actually resides in the Central District. Rather, the only proof offered is that plaintiff's attorney found a home address in a database, called a Central District telephone number, and heard a voice on an answering machine that he identified as belonging to Mr. Hitt. As discussed above, this is far from clear evidence of

1  Mr. Hitt's actual presence in this District.  Nor has plaintiff shown that Mr. Hitt was even involved
2  in the Douglas deal, or that he has any relevant evidence.
3      Accordingly, this factor is neutral, since the Court has been presented with no definitive
4  evidence concerning the location of any non-party witness subject to compulsory process.

### 8.  Ease of access to sources of proof

Plaintiff's corporate headquarters and corporate witnesses are located in the proposed transferee forum.  The parties are likely to submit documentary evidence in their possession.  Plaintiff contends that defendant's records concerning plaintiff are not so voluminous as to prevent them from being brought to California, and that while plaintiff's records with Douglas are "more extensive," the likely trial exhibits could be transported in a single briefcase.  While plaintiff argues that Douglas' records can be obtained from Mr. Hitt, the former CEO of Douglas, located in the Central District, once again plaintiff offers no evidence that Mr. Hitt is still in the Central District, or that he still has any records of Douglas' transactions with plaintiff, even if he is here.  It is thus unlikely that ease of access to this evidence will differ between California and New York.  This factor is therefore neutral.

### 9.  Balancing the factors

Considering all of the factors, only plaintiff's choice of California as a forum supports keeping this action here.  As discussed above, however, the Court does not find that this factor is entitled to much weight.  No witnesses from plaintiff and no witnesses from defendant are located in the Central District of California.  There is no evidence that the insurance policy at issue in this litigation was entered into here, or that any of the players concerning coverage decisions or any decision concerning the policy are connected to this District.  The allegedly breaching actions did not take place here.  The handling of the claim has no connection to the Central District, and the documents concerning the adjusting of the claim are not located here.  The causes of action alleged by plaintiff in the Complaint all center around performance of the insurance policy.  In short, the only evidentiary reason to maintain the case here is the **possibility** that one non-party witness may be present in this District.  In light of the above factors, the Court finds that defendant has met its burden of showing that the overall convenience of parties and

witnesses as well as the interest of justice are best served by transferring this action to the Western District of New York.

## V.
## CONCLUSION

In light of the foregoing, defendant's Motion to Transfer is **GRANTED** and this action is hereby **TRANSFERRED** to the United States District Court for the Western District of New York, at Buffalo.

**IT IS SO ORDERED**.

DATED:   November 16, 2011

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE